**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALAINA GOLD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LASTPASS US LP,<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alaina Gold ("Plaintiff"), individually and on behalf of all others similarly situated, assert the following against Defendant LastPass US LP ("LastPass" or "Defendant")) based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1. LastPass, which serves more than 33 million users globally, maintains a duty to safeguard the sensitive personal information entrusted to it. Public reporting has revealed that on or around June 12, 2026, LastPass became aware of a data security incident involving Klue (klue.com), a third-party market intelligence platform utilized by LastPass's go-to-market teams. This incident, referred to herein as the "Data Breach," resulted from an unauthorized actor obtaining OAuth tokens held by Klue and subsequently using those credentials to access LastPass's customer data within its Salesforce environment.

2. As a result of the Data Breach, Plaintiff's PII was compromised. The impacted data included contact information and related customer relationship management (CRM) data,

specifically Plaintiff's and Class Members' names, phone numbers, email addresses, and physical addresses, as well as support case data and sales-related data (collectively, PII"). LastPass has warned customers that threat actors are utilizing specific sender domains to conduct phishing and social engineering attacks, urging users to remain vigilant against unsolicited communications.

3. The full scope of the Data Breach, including the precise number of affected individuals, remains unknown. Defendant has previously experienced a significant data breach in 2022 involving the theft of unencrypted customer account data and encrypted password vaults, yet the circumstances surrounding the June 2026 incident suggest a failure to adequately secure its third-party integrations and customer data.

4. Plaintiff brings this action to seek damages and injunctive relief for Defendant's negligence, negligence *per se*, breach of implied contract, and unjust enrichment.

## PARTIES

5. Plaintiff Alaina Gold is a natural person, a citizen of the State of California, and a resident of Chico, California. At all times relevant to this action, Plaintiff was a user of Defendant's services.

6. Plaintiff utilized Defendant's cloud-based password management service, LastPass, which stores users' login credentials, personal information, and digital notes in a digital vault. Plaintiff entrusted her sensitive data to Defendant with the expectation that it would be maintained in confidence and secured against unauthorized access. This is especially true, for a password manager, such as LastPass.

7. Plaintiff has suffered harm as a result of the Data Breach, including the exposure of her PII and the increased risk of identity theft and fraud.

8. Plaintiff has been forced to take immediate and time-consuming action to protect her accounts and monitor for suspicious activity, incurring lost time and stress.

9. Defendant LastPass US LP is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located in Boston, Massachusetts. Defendant is a provider of cloud-based password management services and, as of 2024, serves more than 33 million users, including approximately 1.6 million paying customers.

10. Defendant has previously been the victim of a data breach in 2022, involving the theft of unencrypted customer account data and encrypted password vaults following an attack on a software developer's laptop and subsequent infiltration of third-party cloud storage.

11. Defendant failed to implement reasonable security measures to safeguard Plaintiff's PII, despite its knowledge of the risks associated with third-party integrations and its history of prior breaches.

12. Defendant failed to provide timely notice to Plaintiff regarding the Data Breach, preventing Plaintiff from taking immediate steps to mitigate the harm.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. And there are over one-hundred putative Class Members.

14. This Court has personal jurisdiction over Defendant because they have sufficient minimum contacts in Massachusetts. The corporate headquarters of LastPass is in Boston, and LastPass conducted substantial business in Massachusetts.

15. Venue is proper in this Court because the corporate headquarters of LastPass is in this District and because a substantial part of the events, acts, and omissions giving rise to the claims of Plaintiff occurred in this District.

## FACTUAL BACKGROUND

16. Defendant is the provider of LastPass, a cloud-based password management service that stores, organizes, and auto-fills users' login credentials, personal information, and digital notes within a digital vault.

17. As of 2024, Defendant serves more than 33 million users, including approximately 1.6 million paying customers, who entrust Defendant with their sensitive login credentials and personal data.

18. Plaintiff is a user of Defendant's LastPass service and provided her PII to Defendant with the reasonable expectation that it would be kept confidential and secure.

19. On or around June 12, 2026, Defendant became aware of a data security incident involving Klue (klue.com), a third-party market intelligence platform utilized by Defendant's go-to-market teams.

20. The data security incident, referred to herein as the "Data Breach," involved an unauthorized actor who obtained OAuth tokens held by Klue for many of its customers, including Defendant.

21. Using these compromised credentials, the unauthorized actor accessed Defendant's customer data within Defendant's Salesforce environment.

22. The PII impacted by the Data Breach included contact information and related customer relationship management (CRM) data, specifically customer names, phone numbers, email addresses, and physical addresses, as well as support case data and sales-related data.

23. Defendant has warned customers that threat actors are utilizing sender domains including baccarat.com[.]au, robinskitchen.com[.]au, and house[.]com.au to conduct phishing and social engineering attacks.

24. Following the discovery of the Data Breach, Defendant advised customers to remain vigilant for possible phishing attempts and to exercise caution regarding unsolicited communications, including emails, phone calls, or requests for sensitive information.

25. The full scope and size of the Data Breach remain unknown, as Defendant has not yet determined the precise number of individuals whose data was accessed or the extent of the data exfiltration.

26. Defendant has previously experienced a significant data breach in 2022, involving the theft of source code and encrypted password vaults following an attack on a software developer's laptop and subsequent infiltration of Defendant's third-party cloud storage.

27. The recurrence of a security incident involving Defendant's systems demonstrates a pattern of vulnerability and suggests that Defendant failed to implement adequate safeguards to prevent the Data Breach.

28. On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures to protect the CRM data of its customers.

29. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the sensitive contact and personal information of Plaintiff and other customers.

30. It is well known that contact information, including names, phone numbers, and email addresses, is an invaluable commodity and a frequent target of hackers for use in phishing and social engineering attacks.

31. In light of recent high-profile data breaches and the increasing sophistication of cybercriminals, Defendant knew or should have known that its electronic records would be targeted.

32. Defendant's failure to detect the Data Breach in a timely manner and its delayed or incomplete disclosure of the breach's scope deprived Plaintiff of the earliest ability to take appropriate measures to protect her personal information.

33. As a result of the Data Breach, Plaintiff faces a substantial risk of identity theft, fraud, and unauthorized use of her personal information, as cybercriminals may leverage her exposed contact information to impersonate her or gain access to her other accounts.

34. The risk of identity theft and unauthorized use of Plaintiff's information is substantially high, and the fraudulent activity resulting from the Data Breach may not come to light for years.

35. Plaintiff has been forced to spend time and effort monitoring her financial accounts and communications for signs of fraud, a burden that she would not have incurred but for Defendant's security failures.

36. Plaintiff anticipates spending considerable time and money on an ongoing basis to mitigate and address the harm caused by the Data Breach, including the cost of credit monitoring and the risk of long-term identity theft.

37. Defendant's failure to adequately secure and safeguard its systems and networks from a foreseeable and preventable cyberattack proximately resulted in the Data Breach and significant harm to Plaintiff.

38. Defendant's conduct in failing to implement industry-standard practices in securing Plaintiff's and Class Members' PII is evidenced by the Data Breach and the subsequent phishing campaigns targeting its customers.

39. The Data Breach exposed valuable PII that Defendant collected and maintained, leaving Plaintiff and other customers vulnerable to identity theft and fraud for the remainder of their lives.

40. Plaintiff and Class Members would not have entrusted their PII to Defendant had they known of Defendant's lax data security policies and the foreseeable risk of such a breach.

41. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' PII, yet failed to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**A. Dark Web Value and Fraud Risks**

42. The unauthorized actor's access to LastPass's customer data within the Salesforce environment facilitated by the Klue incident has resulted in the exposure of sensitive information to criminal marketplaces, where such data is trafficked for illicit gain.

43. The Defendant's history of security failures, including the 2022 breach where attackers stole unencrypted customer account data and encrypted password vaults, demonstrates a pattern of vulnerability that increases the likelihood that the current exposed data has already reached the dark web.

44. The specific categories of data compromised in this incident include customer names, phone numbers, email addresses, physical addresses, support case data, and sales-related information, all of which possess inherent market value to cybercriminals seeking to monetize personal details.

45. Cybercriminals may leverage this exposed contact and CRM data to execute sophisticated phishing and social engineering attacks, as evidenced by LastPass's own warnings regarding suspicious communications from domains such as baccarat.com[.]au and robinskitchen.com[.]au.

46. The exposure of this information creates a substantial and foreseeable risk of identity theft and fraud, as the combination of contact details and support history allows bad actors to impersonate victims to obtain driver's licenses, government benefits, or medical services.

47. Plaintiff Alaina Gold and other affected users face an ongoing burden of mitigation, including the need to monitor for fraudulent activity, reissue credentials, and address the stress and nuisance of potential unauthorized access to their financial and personal accounts.

48. Once stolen data is replicated and resold on the dark web, the risk of fraudulent use persists for years, as law enforcement faces significant challenges in policing these encrypted networks where criminals can conceal their identities and online activity.

49. These persistent risks necessitate immediate injunctive relief to compel the Defendant to implement enhanced security controls and provide comprehensive monitoring services to mitigate the imminent and certainly impending injury flowing from the possession of Plaintiff's data by unauthorized third parties.

**B. Notification Duties and Regulatory Expectations**

50. On June 12, 2026, LastPass was made aware of a data security incident involving Klue, a third-party market intelligence platform utilized by LastPass's go-to-market teams.

51. Following the discovery of the incident, LastPass learned that an unauthorized actor obtained OAuth tokens held by Klue and used those credentials to access LastPass's customer data within its Salesforce environment.

52. The Federal Trade Commission and other regulatory bodies have long directed businesses to employ intrusion detection systems and immediate response plans to expose breaches as soon as they occur.

53. Adequate notification in such circumstances requires disclosing the specific nature of the compromised data, the scope of the intrusion, and actionable steps for consumers to mitigate risk.

54. LastPass's public warnings identified specific sender domains used by threat actors but failed to disclose the full extent of the data exfiltrated or the specific categories of customer information compromised beyond general contact and CRM data.

55. The size of the Data Breach remains unknown to the Plaintiff and the general public, creating a gap in the information necessary for consumers to assess their individual exposure to identity theft and fraud.

56. Given LastPass's history of prior breaches in 2022 involving the theft of account data and encrypted password vaults, the Defendant was on notice of the significant risk posed by such security failures.

57. The failure to provide timely, comprehensive, and specific notice regarding the June 2026 incident has left Plaintiff Alaina Gold without the ability to take immediate, targeted protective measures against the identified phishing and social engineering threats.

**C. FTC Act Section 5 Duties**

58. At all relevant times, the Defendant had a duty to comply with applicable statutes and regulations, including Section 5 of the FTC Act, which prohibits unfair or deceptive acts or practices in or affecting commerce.

59. The Federal Trade Commission has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices, noting that the need for data security should be factored into all business decision-making.

60. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines requiring businesses to protect personal information, understand network vulnerabilities, and implement policies to correct security problems.

61. The Defendant failed to employ reasonable security measures to secure access to its systems, despite representing otherwise to its user base, which includes more than 33 million users and around 1.6 million paying customers as of 2024.

62. This failure is evidenced by the Defendant's history of security incidents, including a 2022 data breach where an attacker stole customer account data and copies of encrypted

password vaults, and the subsequent June 12, 2026, incident involving unauthorized access to customer data via a third-party platform.

63. The Defendant's failure to maintain adequate safeguards constitutes an unfair practice under Section 5, as the compromised contact information and CRM data expose users to phishing and social engineering attacks that the Defendant warned against but failed to prevent.

64. As a result of these security failures, Plaintiff and other affected users face a substantial and continuing risk of identity theft and fraud, with the potential for fraudulent use of their PII to persist for years.

65. The Defendant's failure to implement reasonable security controls and its inadequate response to known vulnerabilities necessitate injunctive relief to compel compliance with FTC guidelines and to prevent further unfair practices.

## CLASS ALLEGATIONS

1. Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following class:

> Nationwide Class: All individuals in the United States whose PII was compromised in the Data Breach involving LastPass US LP that occurred on or about June 12, 2026.

66. ***Numerosity:*** The Class is so numerous that joinder of all Class Members is impracticable. While the precise number of affected individuals is unknown and within the sole knowledge of Defendant, Plaintiff alleges that the Class includes at least tens of thousands of individuals, given LastPass's reported user base of over 33 million users and 1.6 million paying customers as of 2024. The exact size of the Class and the identities of individual members are identifiable through Defendant's records, including the files implicated in the Data Breach.

67. ***Commonality:*** This action involves questions of law and fact common to the Class. Common questions include whether Defendant had a duty to protect the PII of Plaintiff and Class Members; whether Defendant was negligent in collecting, storing, and securing such information, particularly given its history of a 2022 breach; whether Defendant failed to implement reasonable security procedures appropriate to the nature and scope of the data; and whether Defendant's notification and mitigation efforts were reasonable under the circumstances.

68. ***Typicality:*** Plaintiff's claims are typical of the claims of the Class Members. Plaintiff, like all Class Members, had her contact information and CRM data compromised as a result of the same Data Breach and the same alleged security failures by Defendant. The harm suffered by Plaintiff—exposure to phishing, social engineering, and identity theft risks—is similar to that suffered by all other Class Members and was caused by the same misconduct.

69. ***Adequacy:*** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to or in conflict with the Class. Plaintiff has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

70. ***Predominance:*** Plaintiff's and the Class's claims raise predominantly common fact and legal questions that predominate over any questions affecting only individual Class Members. A class-wide proceeding is necessary to answer common questions regarding Defendant's duty of care, the reasonableness of its security controls, the scope of the breach, and the adequacy of its response. Individual inquiries into the specific damages of each Class Member do not predominate over the common issues of liability and the systemic nature of the security failure.

71. ***Superiority:*** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or financial detriment suffered by individual Class Members, including the costs of credit monitoring, time spent mitigating risks, and the risk of future identity theft, are relatively small compared to the burden and expense of individual litigation. Furthermore, a class action is necessary to prevent inconsistent adjudications and to ensure that Defendant is held accountable for its systemic security failures without the risk of it escaping liability due to the impracticality of individual suits.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
**Negligence**

72. Plaintiff incorporates by reference the allegations contained in the preceding sections of this Complaint as if fully set forth herein.

73. At all relevant times, Plaintiff was a user of LastPass, a cloud-based password manager that stores, organizes, and auto-fills users' login credentials, personal information, and digital notes.

74. As a condition of using Defendant's services, Plaintiff entrusted her sensitive PII, including her name, contact information, and other personal data, to Defendant with the reasonable expectation that Defendant would employ reasonable security measures to protect such information from unauthorized access.

75. Defendant owed Plaintiff a duty of care to implement and maintain reasonable cybersecurity protocols and data security measures to safeguard the PII entrusted to it. Defendant as a password manager, had an even heightened duty of care to protect its customers' PII, as it was its business model to ensure their information was kept secure.

76. Defendant breached its duty of care to Plaintiff by failing to adequately secure its systems and third-party integrations, specifically its integration with the Klue market intelligence platform, which allowed an unauthorized actor to obtain OAuth tokens and access Defendant's customer data within its Salesforce environment.

77. Defendant's negligence is evidenced by its failure to prevent the Data Breach, when Defendant became aware of the security incident involving the unauthorized access to its customer data.

78. Defendant's failure to secure its systems was foreseeable, as Defendant had previously suffered a significant data breach in 2022, yet failed to implement sufficient safeguards to prevent a recurrence or to adequately secure its third-party integrations.

79. As a result of Defendant's negligence, Plaintiff's PII was accessed, acquired, and exposed to unauthorized third parties.

80. The Data Breach has caused Plaintiff to suffer actual injury, including the loss of control over her PII, which has been placed in the hands of cybercriminals who may leverage this information for phishing and social engineering attacks.

81. As a proximate result of the Data Breach, Plaintiff has suffered and continues to suffer harm, including the loss of time and money spent monitoring her accounts, verifying the legitimacy of suspicious communications, and taking steps to mitigate the risk of identity theft and fraud.

82. Plaintiff has suffered and will continue to suffer an imminent and ongoing risk of identity theft, fraud, and misuse of her PII, particularly given the nature of the data exposed and the inability of individuals to change certain personal identifiers.

83. Defendant's negligence directly and proximately caused the injuries and damages suffered by Plaintiff, including the invasion of her privacy, the diminution in the value of her PII, and the anxiety and increased concerns for the loss of her privacy.

84. Plaintiff has been damaged by Defendant's negligence in an amount to be proven at trial, including compensatory damages for the time and expenses incurred to mitigate the harm, and such other damages as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**Negligence *Per Se***

85. Plaintiff incorporates by reference the allegations contained in the preceding sections of this Complaint as if fully set forth herein.

86. Defendant violated specific statutory and regulatory duties designed to protect the privacy and security of Plaintiff's data. Specifically, Defendant failed to implement and maintain reasonable security measures to protect the unencrypted personal information of Plaintiff and the Class, in violation of applicable state and federal data security statutes and regulations, including the FTC Act.

87. Defendant's failure to protect Plaintiff's data was not merely negligent but constituted a violation of the specific duty of care mandated by law. By failing to adequately secure its systems Defendant breached the statutory standard of care required to prevent unauthorized access to sensitive PII.

88. As a direct and proximate result of the Defendant's violation of these statutory duties, Plaintiff has suffered actual injury. These injuries include: (a) the loss of the inherent value of their PII, which has been exposed to cybercriminals; (b) the necessity of incurring out-of-pocket expenses and spending significant time monitoring financial statements and credit reports to detect

and prevent identity theft; (c) the loss of privacy and the emotional distress, anxiety, and fear associated with the knowledge that their sensitive data is in the hands of criminals; and (d) the continued, certainly impending risk of financial identity theft and fraud for years to come.

89. Defendant's conduct was the sole proximate cause of Plaintiff's injuries. Had Defendant adhered to the statutory requirements for data security, including the implementation of adequate encryption, access controls, and monitoring protocols, the Data Breach would not have occurred, and Plaintiff's PII would not have been compromised.

90. Plaintiff seeks compensatory damages for the actual harm suffered, including the diminution of the value of their PII, out-of-pocket mitigation costs, and emotional distress. Furthermore, Plaintiff seeks injunctive relief requiring the Defendant to adopt reasonably sufficient practices to safeguard PII in their custody to prevent future breaches, and to provide lifetime credit monitoring and identity theft protection services to Plaintiff and the Class.

## THIRD CLAIM FOR RELIEF
**Breach of Implied Contract**

91. Plaintiff incorporates by reference the allegations contained in the preceding sections of this Complaint as if fully set forth herein.

92. At all relevant times, Plaintiff was a user of LastPass. As a condition of using Defendant's services, Plaintiff was required to supply Defendant with her PII, including but not limited to her name, email address, phone number, physical address, and login credentials, which Defendant stored in its cloud-based vault.

93. Plaintiff provided her PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information

confidential and secure from unauthorized access, as implied by Defendant's representations regarding the security of its password management services.

94. Plaintiff relied on Defendant's sophistication and reputation as a leading password manager to keep her PII confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information.

95. Plaintiff would not have entrusted her PII to Defendant in the absence of the implied promise to safeguard that information, including the implied duty to implement reasonable cybersecurity protocols to protect against unauthorized access.

96. Defendant derived a substantial economic benefit from collecting and storing Plaintiff's PII, as evidenced by Defendant's business model of serving over 33 million users and 1.6 million paying customers as of 2024.

97. On or about June 12, 2026, Defendant became aware of the Data Breach. Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures to prevent the Data Breach, causing it to lose control over Plaintiff's PII.

98. Defendant's failure to secure its systems is evidenced by its inability to prevent cybercriminals from accessing the PII of its customers, despite Defendant's prior experience with a significant data breach in 2022 involving the theft of unencrypted customer account data and encrypted password vaults.

99. It is well known that PII, including names, email addresses, and phone numbers, is an invaluable commodity and a frequent target of hackers, and Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

100. As a result of the Data Breach, Plaintiff's PII was accessed and exposed to unauthorized third parties, placing Plaintiff at a present risk and an increased risk of identity theft and fraud for years to come.

101. Following the Data Breach, Defendant warned customers about threat actors using specific sender domains and advised customers to remain vigilant for possible phishing attempts, acknowledging the risk of misuse of the exposed data.

102. As a proximate result of the Data Breach and Defendant's breach of the implied contract to safeguard Plaintiff's data, Plaintiff has suffered actual injury in the form of damages to and diminution in the value of her PII, a form of intangible property that Plaintiff entrusted to Defendant.

103. Plaintiff has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach, including time spent on the telephone, sorting through unsolicited emails, verifying the legitimacy of the Data Breach, and self-monitoring her accounts.

104. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties and possibly criminals.

105. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach, as the risk of identity theft and fraud may not come to light for years.

106. Defendant has failed to provide Plaintiff with adequate relief for the damages she has suffered as a result of the Data Breach.

107. As a result of Defendant's breach of the implied contract to safeguard Plaintiff's PII, Plaintiff is entitled to recover damages for the loss of privacy, the diminution in the value of her PII, the costs incurred to mitigate the harm, and the emotional distress and anxiety caused by the breach.

## FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**

108. Plaintiff incorporates by reference the allegations contained in the preceding sections of this Complaint as if fully set forth herein.

109. Plaintiff is a user of Defendant's services and provided Defendant with her personal information, including contact details and account credentials, with the reasonable expectation that Defendant would safeguard such data in exchange for the services provided. Plaintiff would not have entrusted her sensitive information to Defendant absent the implied promise that Defendant would maintain reasonable security measures to protect that data from unauthorized access.

110. As a result of the Data Breach, which occurred in or around June 2026, Defendant failed to adequately secure the systems and data it collected from Plaintiff. Defendant's failure to implement reasonable security controls allowed an unauthorized actor to obtain OAuth tokens and access Plaintiff's contact information, CRM data, and other personal details. This failure constitutes a breach of the implied duty to protect the data Plaintiff entrusted to Defendant.

111. Defendant has retained a substantial economic benefit from the Data Breach by continuing to operate its business using the compromised data and by retaining the value of Plaintiff's personal information, which Defendant failed to protect. Defendant has not provided

adequate compensation or restitution to Plaintiff for the loss of value and control over her personal information, nor has it fully addressed the harm caused by its security failures.

112. It would be inequitable for Defendant to retain the benefits derived from Plaintiff's personal information without compensating Plaintiff for the losses suffered as a result of the Data Breach. Defendant's unjust enrichment is directly attributable to its failure to secure Plaintiff's data, which resulted in the exposure of Plaintiff's PII to unauthorized third parties and the subsequent risk of identity theft and fraud.

113. Plaintiff has suffered actual damages as a result of the Data Breach, including the loss of control over her personal information, the cost of time and effort spent monitoring her accounts, and the increased risk of future identity theft. Defendant has been unjustly enriched by retaining the value of Plaintiff's data and the economic benefits of its business operations, which were facilitated by the inadequate security measures that led to the Data Breach.

114. Plaintiff demands that Defendant be required to disgorge the unjust enrichment it has obtained from the Data Breach, including the value of the personal information it retained and the economic benefits derived from its failure to secure that information. Plaintiff further seeks restitution for the damages she has suffered as a result of Defendant's unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A. Certify this case as a class action, and appoint Plaintiff as Class Representatives and the undersigned attorneys as Class Counsel;

B. Enter judgment in favor of Plaintiff and the Class;

C. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D. Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

G. Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by Defendant through their wrongful conduct;

H. Award Plaintiff and Class Members reasonable litigation expenses and attorneys' fees as permitted by law; and

I. Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: June 25, 2026

Respectfully submitted,

*/s/ Jason Leviton*
Jason Leviton (BBO #678331)
Brendan T. Jarboe (BBO #691414)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: (617) 398-5600
jason@blockleviton.com
brendan@blockleviton.com

Christian Levis
Amanda G. Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel: (914) 997-0500
Email: clevis@lowey.com
Email: afiorilla@lowey.com

Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
Email: achristina@lowey.com

*Counsel for Plaintiff and the Class*